CLOSED

# U.S. District Court
## DISTRICT OF ARIZONA (Phoenix Division)
## CRIMINAL DOCKET FOR CASE #: 2:24-mj-05237-DMF All Defendants

Case title: USA v. Michael

Other court case number: 24-CR-263-1 Eastern District of Pennsylvania

Date Filed: 07/23/2024

Date Terminated: 08/14/2024

Assigned to: Magistrate Judge Deborah M Fine

### Defendant (1)

**Donald Kirk Michael**
26494-511
*TERMINATED: 08/14/2024*
*also known as*
Baseball Fun
*TERMINATED: 08/14/2024*
*also known as*
Donald Michael
*TERMINATED: 08/14/2024*

represented by **Brian Fredrick Russo**
Law Office of Brian F Russo
10037 E Dynamite Blvd
10037 E Dynamite Blvd., Ste. C101
Scottsdale, AZ 85262
602-340-1133
Email: bfrusso@att.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Madeline Ann Mayer**
Federal Public Defender's Office - Phoenix
850 W Adams St., Ste. 201
Phoenix, AZ 85007
602-382-2700
Email: madeline_mayer@fd.org
*TERMINATED: 07/31/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

### Pending Counts

None

### Disposition

### Highest Offense Level (Opening)

None

### Terminated Counts

None

### Disposition

## Highest Offense Level (Terminated)

None

| Complaints | Disposition |
|---|---|
| Rule 5 Indictment - (1) 18:2251(a), (e) Conspiracy to Manufacture Child Pornography; (2) 18:2252(a)(2), (b)(1) Conspiracy to Receive and Distribute Child Pornography; (3) 18:2252(a)(2), (b)(1) Receipt of Child Pornography; (4) 18:2252(a)(2), (b)(1) Distribution and Attempted Distribution of Child Pornography; (5) 18:2252(a)(2), (b)(1) Receipt of Child Pornography | |

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **David A Pimsner** |

US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408
602-514-7500
Fax: 602-514-7650
Email: David.Pimsner@usdoj.gov
*TERMINATED: 07/24/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Gayle L Helart**
US Attorneys Office - Phoenix, AZ
2 Renaissance Square
40 N Central Ave., Ste. 1800
Phoenix, AZ 85004-4408
602-514-7500
Fax: 602-514-7537
Email: gayle.helart@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/22/2024 | 1 | Arrest (Rule 5 - Eastern District of Pennsylvania) of Donald Michael. (SMF) (Entered: 07/23/2024) |
| 07/23/2024 | 3 | MINUTE ENTRY for proceedings held before Magistrate Judge Deborah M Fine: Initial Appearance in Rule 5 Proceedings as to Donald Michael held on 7/23/2024. FINANCIAL AFFIDAVIT TAKEN. IT IS ORDERED appointing AFPD Madeline Mayer for Defendant, for proceedings held in the District of Arizona only. **Defendant states TRUE NAME to** |

| | | |
|---|---|---|
| | | **be DONALD KIRK MICHAEL. Further proceedings ordered in Defendant's true name.** Identity Hearing waived. The Court accepts the Defendant's waiver and finds that identity has been established. The Government is seeking detention. Defense Counsel requests that a Detention Hearing be set and also states that the Defendant may retain counsel. Request GRANTED as set forth below. Based on the possibility that Defendant may retain counsel, the Court finds good cause to set the Detention Hearing on the date agreed upon by the parties. The Defendant is ordered temporarily detained and waives time. <br><br> **Appearances**: AUSA David Pimsner for the Government, AFPD Madeline Mayer for Defendant. Defendant is present and in custody. Detention Hearing set for 7/30/2024 at 10:30 AM in Courtroom 305, 401 West Washington Street, Phoenix, AZ 85003 before Magistrate Judge Eileen S Willett. (Recorded by COURTSMART.) Hearing held 3:38 PM to 3:44 PM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (SST) (Entered: 07/24/2024) |
| 07/23/2024 | 5 | SEALED CJA 23 Financial Affidavit by Donald Kirk Michael. (SST) (Entered: 07/24/2024) |
| 07/24/2024 | 4 | NOTICE OF ATTORNEY SUBSTITUTION: Gayle L. Helart appearing for USA. Attorney David A Pimsner terminated . (Helart, Gayle) (Entered: 07/24/2024) |
| 07/25/2024 | 6 | MOTION for Detention by USA as to Donald Kirk Michael. (Helart, Gayle) (Entered: 07/25/2024) |
| 07/29/2024 | 7 | First MOTION to Continue Detention Hearing by Donald Kirk Michael. (Attachments: # 1 Proposed Order)(Mayer, Madeline) (Entered: 07/29/2024) |
| 07/29/2024 | 8 | ORDER granting Defendant's Motion to Continue Detention Hearing at Doc. 7 as to Donald Kirk Michael. IT IS FURTHER ORDERED continuing the Detention Hearing from July 30, 2024, to **August 13, 2024, at 10:00 AM** before Magistrate Judge John Z. Boyle, in courtroom302, 401 West Washington Street, Phoenix, AZ 85003. Signed by Magistrate Judge Eileen S Willett on 7/29/2024.(AO) (Entered: 07/29/2024) |
| 07/31/2024 | 9 | MOTION to Substitute Attorney by Donald Kirk Michael. (Attachments: # 1 Proposed Order)(Russo, Brian) (Entered: 07/31/2024) |
| 07/31/2024 | 10 | ORDER granting Defendant Donald Kirk Michael's Motion to Substitute Attorney 9 . IT IS FURTHER ORDERED substituting retained counsel Brian F. Russo as attorney of record for Defendant Michael. IT IS FURTHER ORDERED relieving Madeline Mayer, Assistant Federal Public as counsel of record, effective immediately. Please see attached order for complete details. Signed by Magistrate Judge Eileen S Willett on 7/31/2024.(AO) (Entered: 07/31/2024) |
| 08/06/2024 | 11 | MOTION Pretrial Release by Donald Kirk Michael. (Russo, Brian) (Entered: 08/06/2024) |
| 08/06/2024 | 12 | AMENDED MOTION Pretrial Release by Donald Kirk Michael. (Attachments: # 1 Exhibit)(Russo, Brian) (Entered: 08/06/2024) |
| 08/13/2024 | 13 | MINUTE ENTRY for proceedings held before Magistrate Judge John Z Boyle: Detention Hearing as to Donald Kirk Michael held on 8/13/2024. Counsel proceeds by way of proffer. Defendant ordered detained pending trial as a danger. Commitment to Another District Order to follow. LATER: Government's Motion for Detention at Doc. 6 is granted. Defendant's Motion for Pretrial Release at Doc. 12 is denied as moot. <br><br> **Appearances**: AUSA Gayle Helart for the Government, Retained Attorney Brian Russo for Defendant. Defendant is present and in custody. (Recorded by COURTSMART) |

| | | Hearing held 10:15 AM to 10:42 AM. This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry. (AO) (Entered: 08/13/2024) |
|---|---|---|
| 08/14/2024 | 14 | ORDER OF DETENTION as to Donald Kirk Michael. Signed by Magistrate Judge John Z Boyle on 8/14/2024. (AO) (Entered: 08/14/2024) |
| 08/14/2024 | 15 | COMMITMENT TO ANOTHER DISTRICT as to Donald Kirk Michael. Defendant committed to District of Eastern District of Pennsylvania. Signed by Magistrate Judge John Z Boyle on 8/13/2024. (AO) (Entered: 08/14/2024) |
| 08/21/2024 | 16 | Notice to Eastern District of Pennsylvania of a Rule 5 or Rule 32 Initial Appearance as to Donald Kirk Michael. Your case number is: 2:24-CR-00263-MAK-01. Please use PACER Court Links to access the public docket and documents. Any necessary sealed or ex parte documents will be sent in a separate e-mail.<br><br>*(If you wish to designate a different email address for future transfers, please send your request to the national list host at InterdistrictTransfer_TXND@txnd.uscourts.gov.)* (AO) (Entered: 08/21/2024) |

FBI

AO 442 (Rev. 11/11)  Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| United States of America | ) | |
| v. | ) | Case No.   24-CR-263-1 |
| | ) | |
| | ) | 24-5237MJ |
| DONALD MICHAEL a/k/a "Baseball Fun" | ) | |
| Defendant | ) | SEALED |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   DONALD MICHAEL a/k/a "Baseball Fun"                                        ,
who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:
18:2251(a), (e) - CONSPIRACY TO MANUFACTURE CHILD PORNOGRAPHY
18:2252(a)(2), (b)(1) - CONSPIRACY TO RECEIVE AND DISTRIBUTE CHILD PORNOGRAPY
18:2252(a)(2), (b)(1) - RECEIPT OF CHILD PORNOGRAPHY
18:2252(a)(2), (b)(1) - DISTRIBUTION AND ATTEMPTED DISTRIBUTION OF CHILD PORNOGRAPHY

Date:      07/19/2024                                        s/ Eric Sobieski
                                                            *Issuing officer's signature*

City and state:    Philadelphia, Pa                          Eric Sobieski, Deputy Clerk
                                                            *Printed name and title*

| **Return** |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____          _____ |
|                                          *Arresting officer's signature* |
|                                          _____ |
|                                          *Printed name and title* |

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 24- |
| v. | : | DATE FILED: July 18, 2024 |
| DONALD MICHAEL<br>a/k/a "Baseball Fun" | : | VIOLATIONS:<br>18 U.S.C. § 2251(a), (e) (conspiracy to<br>manufacture child pornography – 1<br>count) |
| | : | 18 U.S.C. § 2252(a)(2), (b)(1) (conspiracy<br>to receive and distribute child<br>pornography – 1 count) |
| | : | 18 U.S.C. § 2252(a)(2), (b)(1) (receipt of<br>child pornography – 2 counts) |
| | : | 18 U.S.C. § 2252(a)(2), (b)(1) (distribution<br>and attempted distribution of child<br>pornography – 1 count) |
| | : | Notice of forfeiture |

## <u>INDICTMENT</u>

## <u>COUNT ONE</u>

**THE GRAND JURY CHARGES THAT:**

From on or about April 13, 2020 to on or about October 7, 2021, in the Eastern

District of Pennsylvania and elsewhere, defendant

**DONALD MICHAEL,**
**a/k/a "Baseball Fun,"**

Person #1, and Person #2, who are known to the grand jury, conspired and agreed together to

employ, use, persuade, induce, entice, and coerce minors, who had not attained the age of 18

years, to engage in sexually explicit conduct for the purpose of producing visual depictions of

that conduct, that is, by soliciting minors to photograph and video record themselves engaging in

sexually explicit conduct and transmit the images via the Internet, and defendant MICHAEL,

1

Person #1, and Person #2 knew and had reason to know that the visual depictions would be

transported and transmitted using a facility of interstate and foreign commerce and in and

affecting interstate and foreign commerce, that is, the Internet.

All in violation of Title 18, United States Code, Section 2251(a), (e).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about April 13, 2020 to on or about October 7, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**DONALD MICHAEL,**
**a/k/a "Baseball Fun,"**

and Person #1, who is known to the grand jury, conspired and agreed together to knowingly receive and distribute any visual depiction using any means and facility of interstate and foreign commerce, that is, the Internet, and the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction was of such conduct.

In violation of Title 18, United States Code, Section 2252(a)(2), (b)(1).

3

## **COUNT THREE**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 17, 2021, in the Eastern District of Pennsylvania and elsewhere,

defendant

### **DONALD MICHAEL,**
### **a/k/a "Baseball Fun,"**

knowingly received a visual depiction using any means and facility of interstate and foreign

commerce, and in and affecting interstate and foreign commerce by any means, including by

computer, and the producing of which involved the use of a minor engaging in sexually explicit

conduct, and such visual depiction was of such conduct.

In violation of Title 18, United States Code, Section 2252(a)(2), (b)(1).

4

<u>**COUNT FOUR**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 10, 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**DONALD MICHAEL,
a/k/a "Baseball Fun,"**

knowingly distributed a visual depiction using a means and facility of interstate and foreign commerce, that is, the Internet, and attempted to do so, and the producing of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct.

In violation of Title 18, United States Code, Section 2252(a)(2), (b)(1).

5

<u>**COUNT FIVE**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about January 14, 2023, in the Eastern District of Pennsylvania and

elsewhere, defendant

**DONALD MICHAEL,**
**a/k/a "Baseball Fun,"**

knowingly received a visual depiction using any means and facility of interstate and foreign

commerce, and in and affecting interstate and foreign commerce by any means, including by

computer, and the producing of which involved the use of a minor engaging in sexually explicit

conduct, and such visual depiction was of such conduct.

In violation of Title 18, United States Code, Section 2252(a)(2), (b)(1).

6

<u>**NOTICE OF FORFEITURE**</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 18, United States Code, Sections 2251(a) and 2252(a)(2), as set forth in this indictment, defendant

**DONALD MICHAEL,**
**a/k/a "Baseball Fun,"**

shall forfeit to the United States of America:

      (a)    any visual depiction, or any film, videotape, or other matter which contains any child pornography, which was produced, transported, mailed, shipped, or received as a result of such violations as charged in the indictment;

      (b)    any property, real or personal, constituting or derived from any proceeds obtained directly or indirectly from such violations; and

      (c)    any property, real or personal, used or intended to be used to commit or to facilitate the commission of such violations, including, but not limited to:

      i.    One Apple iPhone 15, bearing IMEI (international mobile equipment identity) number 351698470785888.

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided

7

without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 2428 and

2253, to seek forfeiture of any other property of the defendants up to the value of the property

subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 2428 and 2253.

**A TRUE BILL:**



JACQUELINE C. ROMERO
United States Attorney

8

1  GARY M. RESTAINO
   United States Attorney
2  District of Arizona
   GAYLE L. HELART
3  Assistant U.S. Attorney
   California State Bar No. 151861
4  Two Renaissance Square
   40 N. Central Ave., Suite 1800
5  Phoenix, Arizona 85004
   Telephone:  602-514-7500
6  Email: Gayle.Helart@usdoj.gov
   Attorneys for Plaintiff
7

8              IN THE UNITED STATES DISTRICT COURT

9                  FOR THE DISTRICT OF ARIZONA

10
   United States of America,                No.  24-05237MJ-DMF
11
                        Plaintiff,
12                                           **NOTICE OF
        vs.                                  SUBSTITUTION OF COUNSEL**
13
14  Donald Kirk Michael,
15                        Defendant.

16        NOTICE is hereby given, in accordance with Local Rule 83.3(a) of the Rules of

17  Practice for the U.S. District Court for the District of Arizona, that Assistant United States

18  Attorney Gayle L. Helart is substituted in place of Assistant United States Attorney Dave

19  Pimsner as attorney for the United States.

20        Respectfully submitted this July 24, 2024.

21

22                                      GARY M. RESTAINO
                                        United States Attorney
23                                      District of Arizona

24
                                         _s/ Gayle L. Helart_____
25                                      GAYLE L. HELART
                                        Assistant U.S. Attorney
26

27

28

1

**CERTIFICATE OF SERVICE**

2

3      I hereby certify that on July 24, 2024, I transmitted the attached document to the

4  Clerk's Office using for filing following CM/ECF registrant:

5

6     *s/ Lynne Hughes*
   U.S. Attorney's Office

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

GARY M. RESTAINO
United States Attorney
District of Arizona
GAYLE L. HELART
California State Bar No. 151861
Email: Gayle.Helart@usdoj.gov
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Donald Kirk Michael,<br><br>                    Defendant. | No. 24-5237-mj<br><br>**MOTION FOR DETENTION** |

The United States of America, by and through its attorneys, hereby moves this Honorable Court to detain the defendant prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the defendant's risk of flight.

Over a period of 18 months, the defendant and his co-conspirators, Andrew Wolf and Kray Strange,[1] operated an elaborate online child exploitation catfishing scheme to entice minor boys to self-produce sexually explicit images and send them to the defendants

---

[1] Notably, before the defendant was identified as a participant in this scheme, his co-conspirators were charged in a separate indictment with conspiracy to manufacture child pornography and related offenses in EDPA Criminal No. 22-35-MAK, *United States v. Andrew Wolf, et al*. Both co-conspirators were ordered detained pending trial after their initial appearances in EDPA. Both ultimately entered open guilty pleas to the Indictment. In 2023, Wolf was sentenced to terms of 466 months' imprisonment (nearly 39 years), and Strange was sentenced to 33 years' imprisonment.

over the Internet. At the time, the defendant had been a youth baseball coach for nearly 20 years in Northern Virginia, and regularly bragged to his co-conspirators about his access to minor boys and engaging in hands-on abuse of some of his players by drugging them on overnight trips. Wolf was in his eighteenth year as a middle school teacher at a private school in Philadelphia, and Strange was a young adult living in Carthage, New York. Together, the three targeted boys with large social media followings, such as Little League World Series players and child Tik Tok stars, as well as dozens of Wolf's own boy middle school students. Throughout their years of communications (which amount to more than 300 pages), on a near daily basis, the defendant and his co-conspirators also discussed their shared sexual interest in children and traded images and videos of child sexual abuse material (CSAM).

The defendant described his preferred age of boys to whom he was sexually attracted as 12 to 13 years old (the exact age range of boys he chose to surround himself with by coaching youth baseball), and, on one occasion, the defendant told Wolf, "I should have been a teacher… I only get to see the baseball ones… I can't say I separate it too well with baseball – it's all I think about when I'm with them!!!"

Furthermore, evidence uncovered during the course of this investigation demonstrates that the defendant remains involved in the online world of child exploitation, continuing to operate online accounts in which he purports to be a minor girl to entice boys to self-produce child pornography and send the images to him.

The defendant is charged for his role in these offenses in an Indictment issued by a federal grand jury sitting in the Eastern District of Pennsylvania (EDPA), where the defendant has no community ties. As a result, the defendant faces a statutory maximum of 110 years' imprisonment, a mandatory minimum sentence of 15 years' imprisonment, and sentencing guidelines that call for life imprisonment. The defendant's lack of community ties to EDPA significantly increases his risk of flight. For all these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no

combination of conditions will assure his appearance for trial or the safety of the community, and he should be detained.

## A. **FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

### 1.    **Probable Cause and the Evidence in this Case**

There is probable cause to believe, based on the Indictment issued by the federal grand jury in EDPA on July 18, 2024, that the defendant has committed the offenses of conspiracy to manufacture child pornography, in violation of 18 U.S.C. § 2251(a), conspiracy to receive and distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2), distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).   As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

The evidence in this case is strong.  From as early as April 13, 2020 through the federal arrest of co-conspirator Andrew Wolf in EDPA on October 7, 2021, the defendant and his co-conspirators carried out their child exploitation catfishing scheme and traded child sexual abuse material depicting the children they successfully victimized, as well as other videos and images depicting children engaged in sexually explicit conduct and being sexually abused by adults.

The evidence of the conspiracy includes thousands of Telegram messages over hundreds of pages, which were extracted from Wolf's cell phone pursuant to a federal search warrant.  During these communications, the parties exchanged approximately 150 image/video files.[2]  On Telegram, the defendant used the display name "Baseball Fun" and

---

[2] Due to the files being extracted from Wolf's device in airplane mode (rather than connecting to the Internet and risking destruction of evidence by another Telegram user having

- 3 -

username "@Rmurph" (the first initial and portion of last name of one of the defendant's former youth baseball players). Throughout his communications with Wolf, the defendant shared specific details pertaining to his geographic location (being transferred by his employer from Northern Virginia to Arizona) and travel youth baseball coaching in Northern Virginia. These details were confirmed to be accurate through investigation. Via Telegram, the defendant also shared a screenshot with Wolf, which included the name of an Instagram account that he used to bait minor boys while purporting to be a 13-year-old girl ("steph_turner_2006"). Through investigation, FBI Philadelphia determined that the Instagram account was registered using the defendant's longtime phone number. The defendant's iPhone was seized and searched pursuant to a federal search warrant executed on February 21, 2024, and forensic examination of the device revealed that the unique Instagram user id and the username for this Instagram account were saved in the Keychain feature of the defendant's phone, conclusively linking the defendant to the account.

Throughout their Telegram communications, Wolf and the defendant discussed their shared sexual interest in minor boys, discussed and exchanged images of child pornography, and discussed and strategized "baiting" minor boys, with the assistance of "Alex" (Kray Strange), to self-produce images of child pornography and transmit them over the Internet, including Wolf's own middle school students, Little League World Series players, and others. In the Telegram chat, Baseball Fun and Wolf openly discussed "Alex" (Strange) and his efforts to obtain sexually explicit images and videos from minors by "catfishing" or "baiting" them. In order to do this, Strange assumed a minor girl persona and communicated directly with victims via Instagram and Snapchat. Baseball Fun also made multiple suggestions of specific tactics Strange could use to bait Wolf's students, particularly methods of "blackmail" or sextortion.

---

already deleted the messages), law enforcement can only view the content of a small portion of these files. The others display as "empty" files in the forensic extraction. Of the approximately 31 files whose content could be viewed, approximately 19 depicted child pornography.

The following exchange from January 19, 2021, in which the defendant and Wolf discuss victimizing a 13-year-old student at Wolf's school,[3] is just one example taken from hundreds of pages of Telegram messages of a similar nature demonstrating how the defendant and his co-conspirators carried out their scheme:

Wolf:       alex [co-conspirator Kray Strange] successfully baited a 7th grader
            at my school !!!!!!!!!
            [Sends now empty image file]

**Defendant**:  oh shit - he's cute
Wolf:       Yessir
**Defendant**:  do you know him or is he just in your school?
Wolf:       i know him a little bit but he hasn't been my student yet...next year
            i'll have him...he was too dumb to be in my 6th grade class last year
            lol

**Defendant**:  hahaha - love the dumb ones
Wolf:       [Sends now empty image file]
**Defendant**:  oh, he's a baseball boy too
Wolf:       yes he is!
            [Sends now empty image file]
**Defendant**:  very nice
Wolf:       [Sends now empty image file]
**Defendant**:  nice body type too 😊
Wolf:       i wanna rape him with you so bad right now
**Defendant**:  is it possible?
Wolf:       i dunno. ur the expert ;)
**Defendant**:  well, it's possible - but do you want him to be aware or not?
Wolf:       either way...however we can get him...
            [Sends now empty image file]
**Defendant**:  that's the kid?
Wolf:       yep

---

[3] This child was identified during the course of the investigation, along with 12 more of Wolf's current and former middle school students who were victimized by this scheme, and the child and his parents identified sanitized still images of the child engaged in sexually explicit conduct, which were recovered from Wolf's phone.

**Defendant:** nice- so, is it big?
Wolf:       [Sends now empty image file]
Wolf:       he wasn't lying
            Wonder if he's the biggest of the 7th grade

**Defendant:** yeah, pretty big—too bad he is uncut and has hair

Wolf:       yup
            But the fact that he is a 7th grader in my school erased
            everything I
            didn't like about it and made it super-hot anyway

**Defendant:** haha – for sure – still great
            No face and dick in the same pic?...

Wolf:       [Sends now empty image file]
            This is the most he showed of both at the same time

**Defendant:** he is cute - i'd fuck him

Wolf:       [Sends now empty image files]
            How about when he was 11? 😊

**Defendant:** and not shy at all – that's a bonus
            Damn that's perfect

Wolf:       very yummy
            [Sends series of now empty image files]

**Defendant:** damn, he went all out - that is so hot for you -- knowing that kid –

            we need to rape him

Wolf:       my dick needs to fill one of his holes
            Last thing he sent 😊
            [Sends now empty image file]

**Defendant:** is it bad that after we rape him, i kind of want to circumcise him

Wolf:       nope

- 6 -

1   I wish he had pulled down the skin to show what's
    underneath… I
2   bet it's nice under there

3   **Defendant:**   yeah my thoughts too – I guess there is no chance alex [co-
4                    conspirator Strange] can get more from him?
5                    Love to see his ass too

6   Wolf:            only if he comes back for more
7                    He blocked him then unlocked and did more… then blocked
                     again

8
9   **Defendant**:   gotcha—he could be a good one for blackmail
    Wolf:            yes!
10  **Defendant:**   i think it would be funny to threaten them with the names of
    some
11  of his teachers - saying the videos would be sent to them unless he
12                   does "whatever"

13  Wolf:            wish I could see his reaction when that would happen
14                   And read his thoughts
                     Freaking out
15                   Weighing his options

16  **Defendant:**   right, exactly -- or even have alex tell him his parents names
17  (if you know them) - that could freak him out too

18  Wolf:            yeah I could get that easily
19                   I wonder if he would think that it was his friends pranking
                     him tho
20

21  **Defendant:**   yeah that's true – but he is dumb right?

22  Wolf:            yeah he's a pretty weak student
23                   Not sure how he is with common sense/street smarts whatev

24  **Defendant:**   could just tell him it is being sent around to some boys in the
25                   school – that could freak him out
                     i don't know - just thinking out loud in order to get more:)
26

27  Wolf:            exactly
                     I think alex can try again with his second account too
28

- 7 -

1    We'll see

2    **Defendant**:   cool – thanks for sharing him – hopefully we can share him in
3    another way

4    In addition to Wolf's students, the group also targeted boys who played in the 2021

5    Little League World Series (LLWS) for victimization.   The defendant and Wolf began

6    discussing the LLWS players in September 2021, and the defendant told Wolf that he "gave

7    [Strange] the list of players to go after."   On September 10, 2021, the defendant and Wolf

8    traded images of child pornography depicting two identified LLWS players (then age 12)

9    exposing their genitals and masturbating and engaged in the following exchange:

10   **Defendant**:   [Sends now empty image file]
     That's another from [identified minor victim from 2021
11   LLWS]

12   Wolf:           😊 what a perfect dick and pubic area
13

14   **Defendant**:   yup – and you can tell he has never cum – doesn't know how
15   to
     jerk – perfect

16   Wolf:           I saw their stats online. 5'2" 90-92 pounds
17

18   **Defendant**:   perfect, right…

19   Wolf:           Ty!
     After drooling at my TV all these years watching LLWS, to
20   have
21   now seen a couple of boys like this… mmmm

22   **Defendant**:   lol – for sure – I'm hoping this becomes a yearly activity!!
23   …

24   **Defendant**:   … funny thing is, I'm talking with the pitcher, [minor
25   victim's name] as well – he is not talkative at all – barely get
     a reply every other day
26

27

28

| | | |
|---|---|---|
| Wolf: | | still fun to know you are talking to him though. Didn't know you were talking to any boys! You talking with any of the others? |
| **Defendant**: | | just started – I've sent some messages to other little league boys but don't really get any responses – just having fun |
| Wolf: | | Did you make a fake acct I assume |
| **Defendant:** | | yeah had one for awhile |

In addition to the files described above, the video and image files where content is viewable include at least four videos depicting a 7-year-old boy with his penis and anus exposed being masturbated by an adult's hand.

The defendant's child exploitation activity has not been limited to his communications with Wolf and Strange. During this investigation, FBI uncovered at least four CyberTips from various electronic service providers to the National Center for Missing and Exploited Children (NCMEC) regarding accounts associated with the defendant uploading or exchanging child sexual abuse material. One of these was a Twitter account used as recently as 2023, which was subscribed to the defendant's phone number and used IP addresses subscribed to the defendant at his residence and place of employment. Using this Twitter account, the defendant purported to be a 12-year-old boy, exchanged child sexual abuse material with other Twitter users via direct messages, and solicited child sexual abuse material from other users. One of these users has been identified as a minor boy who resides in the Eastern District of Pennsylvania.

On February 21, 2024, FBI executed a federal search warrant at the defendant's residence in Gilbert, Arizona, and seized the defendant's iPhone from his person. The iPhone was forensically examined. The iPhone was set up on January 3, 2024. In an overall self-serving statement, the defendant told FBI that he destroyed his old cell phone by *smashing it with a hammer* for no particular reason. The device phone number is the defendant's longtime phone number, associated with the CyberTips described above. Most importantly, the phone contained Instagram login data for the "steph_turner_2006" account

and the unique Instagram user ID associated with that account, a screenshot of which the defendant shared with Wolf via Telegram as his own fake minor girl persona account, which led to the defendant's identification as Baseball Fun.  The last update date for that account was October 10, 2021 (three days after Wolf's arrest).  The phone also contained login information for an IPVanish VPN account.  Within the Apple Keychain passwords, the username associated with this IPVanish account was the full name of one of the defendant's former youth baseball players.  Notably, the screenshot that Baseball Fun sent Andrew Wolf of his "Steph_Turner_2006" Instagram baiting account depicted an IPVanish logo in the taskbar.

The phone contained one thumbnail image from the photos application that appears to depict child pornography with a creation date of February 5, 2022, as well as some other age-difficult material, and at least 200 images of child erotica, to include images of minor boys wearing bathing suits and posing for shirtless photos. The phone contained hundreds of videos and images of the LLWS, primarily of the 2023 Needville, Texas team.  These included cached images of the players' bios, listing their names, photos, numbers, and fun facts.

The phone contained the following Safari history of note:
- Multiple visits to the URL for the Instagram profile of one of the LLWS players that the defendant told Wolf he was talking to using his minor girl persona as early as September 2021
- Help on your suspended Twitter account, 8/22/22
- How to delete a suspended Twitter account, 8/22/22
- Instagram's age verification keeps teens from pretending to be adults – The Washington Post, 10/15/22
- Virtual telephone number for calls and SMS services, 10/15/22
- Does Instagram notify when you screen record video calls, 11/25/23
- Can you send private messages on TikTok without having an account? 12/1/23
- Can you direct message TikTok accounts you don't follow, 12/1/23
- Simple ways to send messages on TikTok without a phone number, 12/1/23

The phone also contained Google searches of interest, such as:

- Tortolita middle school, 7/20/22
- Needville junior high, 11/9/23
- Needville high school football, 11/24/23
- If you are in facetime does it show a screenshot on Instagram, 11/25/23
- Can you sign up for tiktok without a phone number, 12/1/23
- Can you dm on tiktok, 12/1/23
- Needville middle school, 12/1/23
- Needville junior high, 12/1/23
- How to remove cache from Instagram iphone, 2/2/24
- Woodinville high school baseball schedule, 2/20/24

The Telegram application was not currently installed on the device, but the phone contained log entries of cellular network data usage from the Telegram application. The phone also contained an iCloud Keychain for Telegram.

In addition to the "Steph_Turner_2006" Instagram account discussed above, the defendant's iPhone also contained Instagram login data for at least 18 other unique Instagram user IDs, most of which had girls' names as the usernames. One of these was "chole_greens14," last updated on December 24, 2023, for which FBI obtained a federal search warrant. This account was registered using the defendant's phone number and used IP addresses subscribed to the defendant at his residence. The account contained at least 46 files of child pornography, 10 of which were from the account holder to other users and depicted an unknown minor girl. The remaining files were sent by minor boys to "Chloe." "Chloe" purported to be a minor girl anywhere between 12-14 years old, depending on the age of the boy with whom she was communicating. "Chloe" told the boys with whom she was communicating that she was from South Carolina and was a Washington Nationals baseball fan. Notably, in communications with one boy, "Chloe" sent him a photograph of her cat--- the cat is the defendant Donald Michael's cat, as captured in search warrant photographs taken on February 21, 2024, and the cat is sitting on a bed, which has an identical frame to Donald Michael's bed. The same image of the cat sitting on the bed was located on Michael's iPhone with a creation date of April 19, 2020.

Based on "Chloe's" direct messages with several minor boys, FBI Philadelphia has identified additional victims of the defendant. Since May 2024, FBI Philadelphia has sent

eight additional leads to have these boys identified and interviewed.  To date, three of the boys have been confirmed as victims, and two of those three have been forensically interviewed.

### 2.   Maximum Penalties

The defendant faces a maximum penalty of 110 years' imprisonment with a mandatory minimum term of 15 years, a minimum 5 years up to a lifetime of supervised release, along with various financial penalties and assessments.  The defendant's estimated sentencing guideline range calls for a life sentence, significantly higher than the mandatory minimum 15 years' imprisonment.

### 3.   Criminal History

If convicted, the defendant faces a 15-year mandatory minimum sentence and sentencing guidelines that call for a life sentence, having never before served a prison sentence.  The prospect of this lengthy sentence gives the defendant every incentive to flee.

### 4.   Employment/Community Ties

The defendant has no ties to the Eastern District of Pennsylvania.  The location of the Court in EDPA where the defendant will be required to appear is approximately 2,400 miles away from his residence, requiring a flight or more than 35 hours driving one-way through several states to appear in court as required.  The defendant's lack of community ties to EDPA, where he is charged with very serious crimes, significantly increases his risk of flight should he be released pending trial.

As discussed above, the defendant also engaged in deceitful online activity from at least as early as 2020 by misrepresenting his identity as a minor teenage girl or boy on various social media applications, rather than the adult man that he is, and by assisting other sex offenders to do the same, in a clear attempt to gain access to more minor boys to victimize.

The defendant is not currently employed as far as the government knows.  Records obtained from the defendant's previous employer reflect that he was terminated in June 2023 for misconduct related to compensation/wage fraud.

1
2
3
4
5
6
7

**B.    LEGAL ARGUMENT**

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. §§ 2251(a) and 2252(a)(2).    This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

The dangers surrounding these types of offenses are widely recognized.  *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders).  A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986).

25
26
27
28

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released.  Even a condition that prohibits the defendant from having contact with minor children would not adequately assure the safety of children in the community if the

defendant is released because there is no way to effectively monitor his compliance with such a condition.  Only a 24-hour watch by the Bureau of Prisons can ensure the safety of the community and children, in particular, from the defendant.

Furthermore, there is no way to effectively monitor this defendant's online access to children and other sexual predators, for the following reasons:

(1)   Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices.  There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2)   Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate.  There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in his home or elsewhere.

(3)   There is no way to monitor whether the defendant will access the Internet – and child pornography and/or communication with minors about sexual activity – using a public library's computers, using family members' or friends' electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

(4)   Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if he were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether.  The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

It is difficult to conceive of any supervision that would detect the defendant's criminal activities.  Pre-Trial Services is limited to inspection of items that are in plain view of the officers.  Nor is Pretrial Services permitted to seize electronic evidence.  The fact that the defendant has no ties to EDPA further hinders the ability of Pretrial to supervise him because he would likely be supervised outside the district in which he is charged.  "The ubiquitous presence of the internet and the all-encompassing nature of the

information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from creating, viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir. 2007) (finding detention appropriate for a defendant charged with distributing and receiving child pornography, based on the dangers associated with child pornography offenses and the difficulty to effectively monitor understanding the accessibility of the Internet). Accordingly, the government requests that the defendant remain in custody pending trial.

The defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if he is released. The defendant has victimized hundreds of children via the Internet. Through his involvement in the conspiracy outlined above and his ongoing child exploitation activities, he has already demonstrated that he is willing to engage in deceit to get what he wants— access to boys – which suggests he would be even more difficult to monitor on pretrial release. There is simply no way to adequately monitor this defendant should he be released, nor any way to ensure compliance with any conditions this Court may impose, to eradicate the danger he poses to children in the community. Only a 24-hour watch provided by the Bureau of Prisons will ensure that the defendant does not endanger the public.

Moreover, prison is a certainty for this defendant if convicted of these crimes– he faces a mandatory minimum of 15 years' imprisonment, and sentencing Guidelines call for an even higher sentence of life imprisonment. The anticipation of this severe sentence gives the defendant every incentive to flee, knowing that he will spend a significant period of time in prison. The defendant's lack of ties to the Eastern District of Pennsylvania significantly increases his risk of flight. In addition, the prospect of this lengthy prison

1    sentence makes him even more of a danger to children in the community, knowing that his

2    release on bail may be the last time he is free in many years, if ever.

3

4    **C.**    <u>**CONCLUSION**</u>

5          For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C.

6    § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure his

7    presence for trial or the safety of the community.

8          WHEREFORE, the government respectfully requests the Court to detain this

9    defendant prior to trial.

10         Respectfully submitted this 25th day of July, 2024.

11

12         GARY M. RESTAINO
     United States Attorney

13

14         */s/ Gayle L. Helart*
15         GAYLE L. HELART
     Assistant U.S. Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

      I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

Madeline Mayer, *Attorney for Defendant*.

6

7

8

*s/ Lynne Hughes*
U.S. Attorney's Office

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

1  JON M. SANDS
   Federal Public Defender
2  District of Arizona
   850 W. Adams, Suite 201
3  Phoenix, Arizona 85007
   Telephone: 602-382-2700
4
   MADELINE A. MAYER
5  State Bar No. 035095
   Asst. Federal Public Defender
6  Attorney for Defendant
   madeline_mayer@fd.org
7

8              IN THE UNITED STATES DISTRICT COURT

9                      DISTRICT OF ARIZONA

10  United States of America,              No. MJ-24-5237-PHX-DMF

11                 Plaintiff,
                                           **MOTION TO CONTINUE
12         vs.                             DETENTION HEARING**

13  Donald Kirk Michael,                      (First Request)

14                 Defendant.

15

16         Defendant Donald Michael through undersigned counsel, respectfully moves

17  this Court for an order continuing the detention hearing in the above matter

18  currently set for July 30, 2024, at 10:30 a.m., before the Honorable Eileen S.

19  Willett, for two weeks. Mr. Michael is in the process of hiring private counsel. A

20  continuance will allow time for the transition to new counsel to be made.

21         Defense counsel conferred with Assistant United States Attorney Gayle

22  Helart regarding this requested continuance. Ms. Helart advised that the United

23  States has no objection.

24  …

25

26

27

28

1

2

Excludable delay is not expected to result from this motion or from an order based thereon.

3        Respectfully submitted:   July 29, 2024

4                                  JON M. SANDS
                                   Federal Public Defender

5

6                                   *s/Madeline A. Mayer*
7                                  MADELINE A. MAYER
                                   Asst. Federal Public Defender

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6                 IN THE UNITED STATES DISTRICT COURT
7                         DISTRICT OF ARIZONA
8
9    United States of America,              No. MJ-24-5237-PHX-DMF
10                   Plaintiff,
11   v.                                     **ORDER**
12   Donald Kirk Michael,                   (First)
13                   Defendant.
14
15        Upon review of Defendant's Motion, there being no objection from the
16   government, and good cause appearing,
17        IT IS ORDERED granting Defendant's Motion to Continue Detention
18   Hearing (Doc. ____).
19        IT IS FURTHER ORDERED continuing the detention hearing from July 30,
20   2024 to _____.
21        The Court finds no excludable delay under Title 18 U.S.C. § 3161(h) ____
22   from _____ to_____ .
23        Dated this ____ day of July, 2024.
24
25
26
27
28

1
2
3
4
5
6                        IN THE UNITED STATES DISTRICT COURT
7                                  DISTRICT OF ARIZONA
8
9       United States of America,                    No. 24-5237-MJ
10                     Plaintiff,
11      v.                                            **ORDER**
12      Donald Kirk Michael,
13                     Defendant.
14
15          The Court having reviewed the Motion to Continue Detention Hearing (Doc. 7), no
16   objection from the government, and good cause appearing,
17          IT IS ORDERED granting the Motion to Continue Detention Hearing (Doc. 7).
18          IT IS FURTHER ORDERED continuing the Detention Hearing from July 30, 2024,
19   to August 13, 2024, at 10:00 AM before Magistrate Judge John Z. Boyle, in courtroom
20   302.
21          The Court finds excludable delay under 18 U.S.C. § 3161 (h)(7) from _____ to _____.
22          Dated this 29th day of July, 2024.
23
24          _____
                    Honorable Eileen S. Willett
25                 United States Magistrate Judge
26
27
28

1

**Brian F. Russo (018594)**
**Law Office of Brian F. Russo**
10037 E. Dynamite Blvd.
Ste. C-101
Scottsdale, Arizona 85262
(602) 340-1133 Telephone
bfrusso@att.net Email
Attorney for Defendant

2

3

4

5

### IN THE UNITED STATES DISTRICT COURT

6

### DISTRICT OF ARIZONA

7

| | |
|---|---|
| The United States of America, | ) Case No. 24-5237-MJ |
| | ) |
| Plaintiff, | ) **MOTION FOR SUBSTITUTION OF** |
| | ) **COUNSEL** |
| vs. | ) |
| | ) |
| Donald Kirk Michael, | ) |
| | ) |
| Defendant. | ) |
| | ) |

8

9

10

11

12

13

14

Comes now the Defendant, Federal Public Defender Madeline A. Mayer and retained attorney Brian F. Russo and moves this Honorable Court for an order permitting Federal Public Defender Madeline Mayer to withdraw as attorney of record and substitute retained attorney Brian F. Russo in her place for all further proceedings.

15

16

17

18

Defendant Michael (#26494-511) is currently being detained at Central Arizona Florence Correctional Complex, 1100 Bowling Road, Florence, Arizona 85132.

19

20

Dated: July 31, 2024        */s/ Donald Kirk Michael (signed with permission)*
                                            Donald Kirk Michael

21

                                            */s/ Madeline Ann Mayer (signed with permission)*
                                            Madeline Ann Mayer

22

23

                                            */s/ Brian F. Russo*
                                            Brian F. Russo

24

25

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Gayle L. Helart, AUSA


*/s/Brian F. Russo*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The United States of America, | ) Case No. 24-5237-MJ |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Donald Kirk Michael, | ) |
| Defendant. | ) |

The Court having Reviewed the Defendant's Motion to Substitute Counsel, and good cause appearing,

IT IS ORDERED granting the defendant's Motion (Doc.      )  and substituting retained counsel Brian F. Russo as attorney of record for Defendant for all further proceedings in the place of Federal Public Defender Madeline A. Mayer effectively immediately.

DATED this _____ day of _____2024.


_____
Honorable John Z. Boyle
United States District Court

1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**
7              **FOR THE DISTRICT OF ARIZONA**
8
9    United States of America,              No. 24-05237MJ-001-PHX-DMF
10              Plaintiff,                   **ORDER**
11   v.
12   Donald Kirk Michael,
13              Defendant.
14
15          The Court having considered the Motion for Substitution of Counsel (Doc. 9) and
16   good cause shown,
17          IT IS ORDERED granting the Motion for Substitution of Counsel (Doc. 9),
18          IT IS FURTHER ORDERED substituting retained counsel Brian F. Russo as
19   attorney of record for Defendant Michael,
20          IT IS FURTHER ORDERED relieving Madeline Mayer, Assistant Federal Public
21   as counsel of record, effective immediately.
22          The Court finds excludable delay under 18 U.S.C. § 3161 (h)(7) from _____ to
23   _____.
24          Dated this 31st day of July, 2024.
25
26          _____
            Honorable Eileen S. Willett
27          United States Magistrate Judge
28

**Law Office of Brian F. Russo**
Brian F. Russo, Esq. (AZ Bar 018594)
10037 East Dynamite Blvd.
Suit C-101
Scottsdale, AZ 85262
Telephone (602) 340-1133
E-mail: bfrusso@att.net
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

\* \* \* \* \*

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-5237-mj |
| | ) | |
| vs. | ) | |
| | ) | **MOTION FOR PRETRIAL** |
| Donald Kirk Michael, | ) | **RELEASE** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

COMES NOW, the Defendant, Donald Michael, by and through counsel undersigned, and hereby moves this Honorable Court for an order releasing the Defendant pending trial in this matter because he is not a flight risk and does not pose a danger to himself or the community.  Mr. Michael respectfully suggests that he will rebut the Statutory presumption and that there are conditions and combinations of conditions that will effectively address and mitigate any concerns.

This Motion for Pretrial Release is made and based upon the attached Memorandum of Points and Authorities, the argument of counsel, and any other such evidence as may be presented at the time of hearing.

Dated this 6th day of August, 2024.

_____/S/Brian F. Russo_____
Brian F. Russo
Attorney for Defendant

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **STATEMENT OF THE FACTS**

First and foremost, it should be noted that Donald Michael has no criminal history and has never failed to appear for a court date.  He is 46 years old and has own real property in Arizona.  He currently resides with his Mother Shirley Michael and his Father David Michael in Queen Creek Arizona.   Neither his Father, nor his Mother have any criminal history.    Mr. Michael also owns real property in Gilbert, Arizona, which he utilizes as rental property.

Mr. Michael's Mother and Father moved to Arizona so that he could serve as their full-time care assistants.  Mr. Michael's Father has been diagnosed with terminal Glioblastoma and cannot care for himself.   Mr. Michael's Mother is older and has limited ability to care for his Father by herself and therefore they require the assistance of Mr. Michael to drive them to and from Doctor and Hospital Appoints, pick up medications, go grocery shopping, pay the bills, do daily and routine tasks necessary to the function of a home and all other requirements they may have.

Mr. Michael is paid $7,000.00 per month by his parents to serve as their full-time and live-in care giver.  Mr. Michael has never had any issues of violence or caused harm to himself or others.

On February 21, 2024, the FBI executed a search warrant at the residence in which Mr. Michael and his parents live. As mentioned above, Mr. Michael's parents are elderly, and his Father suffers from a terminal illness. This was a traumatic experience for the family, but they remained polite and cooperative with law enforcement.

Mr. Michael was also advised prior to his arrest that his co-defendants were arrested and charged in the EDPA. He was made aware that he was going to be arrested and charged as well. Nevertheless, during that nearly 6 month period, Mr. Michael never left the jurisdiction and continued to reside and care for his parents. He never attempted to flee or hide himself from law enforcement or the jurisdiction of the Court.

***Pretrial Services Report***

1. At page 3, first paragraph PTS states that Mr. Michael lives near Crimson High School. (*See Copy of Google Map attached hereto as Exhibit 1).* Although, Mr. Michael loves in the vicinity of the High School he has never been there and can effectively be restricted and monitored from being near the high school. For example, the Court can order that Mr. Michael is not permitted to travel by foot, vehicle or otherwise south of E. Cloud Road, West of South 20th Street and East of South Crismon Road. Electronic monitoring and GPS detection would be able to insure this restriction.
2. PTS includes a statement from law enforcement also at page 3 second paragraph that is self-serving, uncorroborated, and there is no proof to support this unnecessary piece of information. It should be disregarded by the Court.
3. PTS claims Donald Michael is a risk of flight because of the nature of the charges. It is conceded that the charges are serious and expose Mr. Michael to very harsh penalties. However, as the Court knows nature of

the charge is the least weighted factor because the Defendant is presumed innocent and has not had an opportunity to review the government's evidence in support of the charges.

4. PTS claims Donald Michael lacks legitimate employment. His parents would unequivocally disagree as they rely completely upon him and pay him for his time and their dependence on him. (*See copies of payments made to Donald Michael from David Michael attached hereto as Exhibit 2).*

5. Mrs. Shirley Michael will bring Donald Michael's Passport to the United States District Court on August 13, 2024, for surrender to the Court.

6. PTS claims he has a history of international travel and traveled to Canada for work. Contrary to the insinuation Mr. Michael is an international man of mystery, his last travel was 8 years ago, and travel was infrequent at best. Most importantly thought he has no ties or connections in any foreign jurisdictions.

7. PTS claims Mr. Michael is a danger because of the charges and use of internet. Again, the presumption of innocence addresses the charges and internet usage can be restricted. In fact, this Court has restricted internet use, and their enforcement has been effective. In fact, Counsel is aware of specific instances where if the condition is violated it is reported to the Court without delay. Accordingly, this Court could prohibit the use of internet or any devices that could connect to the internet effectively addressing this concern.

### *Government's Motion*

1. The government's motion relies primarily on the nature of the offense conduct and Mr. Michael's potential sentence if convicted. For the reasons cited above, Mr. Michael enjoys the Constitutional presumption of innocence and has not received discovery in order to address the evidence in the case. He does not deny that the allegations are serious, and he is exposed to significant prison time. However, he has entered a plea of not guilty, is presumed innocent and has hired Counsel to defend against the charges.

2. The government's motion at page 2, lines 1-2 is misleading. Mr. Michael was not a baseball coach living in Northern VA "[a]t the time" as the government claims. In fact, he has been in Arizona for over 5 years. The alleged offense conduct in the indictment is from 2020 to 2021 when he was residing in Arizona.

3.  Finally, the government claims that because the Court in which the
    charges were filed requires an airplane trip or a long car journey, he
    should be detained.  This is absurd logic.  Air travel today is fast,
    cheap and easy. (*See copy of Exhibit 3 attached hereto).*  Counsel
    currently has cases in several different states and frequently makes
    court appearances there via air travel.  Mr. Michael has some means
    and would certainly use his resources to make his Court appearances
    with Counsel.  Further, as this Court is aware, many Courts across the
    Country including many United States District Courts utilize video
    and telephonic means for court appearances.  Accordingly, the claim
    that PA is far from AZ is simply not a logical or supported reason to
    deny Mr. Michael his liberty.

## STATEMENT OF THE LAW

### *Presumption*

Since the presumption under 3142(e) is invoked, the Defendant need only

present some credible evidence showing he is not flight risk or danger to himself or

the community.  That is, the Defendant has the burden of production only. *U.S. v.*

*Alatishe*, 768 F.2d 364 (D.C. Cir. 1985); *U.S. v. Jessup*, 757 F.2d 378 (1st Cir.

1985); *U.S. v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985); *U.S. v. Perry*, 788 F.2d

100 (3d Cir. 1986); *U.S. v. Fortna*, 769 F.2d 243 (5th Cir. 1985); *U.S. v. Hazime*,

762 F.2d 34 (6th Cir. 1985); *U.S. v. Portes*, 786 F.2d 758 (7th Cir. 1985); *U.S. v.*

*Hurtado*, 779 F.2d 1467 (11th Cir. 1985); *U.S. v. Freitas*, 602 F. Supp. 1283 (N.D.

Cal. 1985); *U.S. v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985).

In a "presumption" case the language from Justice Brunetti, in his

concurring opinion, in **United States v. Fernandez-Alfonso** illuminates the fact

that:

A presumptively innocent defendant has a great liberty interest in avoiding pretrial detention. Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act. Because Fernandez-Alfonso attempted to rebut Section 3142(e)'s presumption ... the legislative history [of the Act] requires that the district court discuss conditional release. Its failure to do so makes its finding that no conditions could be fashioned to assure Fernandez-Alfonso's appearance error.

Additionally, it is clear that the Government must establish that no condition or combination of conditions of release would reasonably assure the safety of the community by clear and convincing evidence. **See**, **18 U.S.C. 1342(f)**; **United States v. Salerno** 481 U.S. ___, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); **United States v. Walker**, 808 F.2d 1309 (9th Cir. 1987); and **United States v. Kouyoumdjian** 601 F.Supp. 1506 (CD Cal 1985).

Here, Mr. Michael has produced more than the minimum of amount of credible evidence to rebut the presumption. He has also outlined and suggested conditions of release that can be set and that will reasonably assure his appearance and the safety of the community. These conditions will reasonably assure Mr. Michael's appearance and his compliance with all court orders. In addition, Mr. Michael's Mother Shirley, with whom he lives has been vetted by PTS as suitable candidate to be a third-party custodian.

It must be emphasized that in enacting the "reasonably assure" standard, Congress merely "codified existing authority to detain persons who are serious flight risks." S.Rep. No.98-255, 98th Cong. 2d Sess. 4,, reprinted in 1984 U.S.

Code Cong. And Admin. News, 3182, 3201.  The "existing authority" at that time was exemplified by *United States v Ramirez*, 589 F. Supp. 137 (D. Minn 1984); *United States v. Schiavo*, 587 F.2d 532 (1st Cir. 1978).  All factors outlined above and the fact that he has retained Counsel demonstrate that Mr. Michael takes this case seriously and will appear and defend.

Recognizing this very principle, the Court, in *United States v. Meinster*, 481 F. Supp. 1117 (S.D. Fla. 1979), held that to revoke bond based upon likelihood of flight "The United States must demonstrate by the totality of the circumstances ... that there is no reasonable assurance that the defendant will continue to appear for trial and at sentencing..."  Id. at 1122.  See also *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (not only should doubts regarding the propriety of release be resolved in favor of the defendant, but that "only in rare circumstance should release be denied").

Donald Michael knew for almost 6 months that he would be charged and arrested and that the charges would be very serious, exposing him to a lengthy prison sentence.   Nevertheless, he continued to care for his parents, maintained his residence, and otherwise never attempted to secret himself from the Court's jurisdiction. These are not the actions of someone who is a flight risk or danger. Accordingly, the presumption has been rebutted and Donald Michael should be released.

Once, the presumption has been rebutted as is the case here, the Court must look to the factors concerning release and the Bail Reform Act. The ***Bail Reform Act of 1984 (18 USC 3141, et seq.)*** is designed to permit detention of individuals who 1) the government believes to be dangerous, during times of war or insurrection; 2) potentially dangerous resident aliens, pending deportation proceedings; 3) mentally unstable individuals who present a danger to the public; 4) dangerous criminal defendants who become incompetent to stand trial; 5) juvenile arrestees, prior to trial, when they present a continuing danger to the community; 6) arrestees who are suspected of a crime, until the court determines whether probable cause exists; and 7) arrestees, prior to trial, when they present either a risk of flight or danger to the community.

As the High Court stated in *United States v. Salerno*, 41 US 739, 107 S.Ct. 2095, 95 L.Ed.2nd 697 (1987), in the United States, liberty is the norm, and detention is the carefully limited exception. Furthermore, the High Court found that the ***Act*** operates only on individuals who have been arrested for particular extremely serious offenses, and carefully delineates the circumstances under which detention will be permitted. The Court found that the ***Act's*** extensive procedural safeguards are specifically designed to further the accuracy of the likelihood of future dangerousness determination.

Indisputably, the ***Bail Reform Act of 1984*** allows a court to detain a defendant if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community." It is only under circumstances where the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that it may be reasonably deemed appropriate to order detention of the person.

The Court also addressed the issue of risk of flight. Where the government seeks to detain someone based upon a risk of flight the court has stated that bail must be set by the court at a sum designed to assure that goal, and no more, citing, *Stack v. Boyle*, 342 US 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

As the court reiterated in *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1981) the ***Bail Reform Act*** requires release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person as required and safety of community.

The factors which must be considered in determining whether there are conditions of release that will reasonably assure appearance of the person and the safety of the community are 1) nature and seriousness of the offense charged; 2) weight of evidence against defendant; 3) defendant's character; 4) physical and mental condition; 5) family and community ties; 6) past conduct; 7) history

relating to drug and alcohol abuse; 8) criminal history; and 9) nature and

seriousness of danger to any person or community that would be posed by

defendant's release. *US v. Motamedi*, 767 F.2d, at 1407.

It is also a fundamental principle of our criminal justice system that

congressional action may not be interpreted to preclude or restrict the power of the

judiciary to effectuate the federally guaranteed constitutional rights of an accused,

pursuant to the doctrine of separation of powers. *Marbury v. Madison*, 5 U.S. 1 (1

Cranch) 137 (1803). As the United States Supreme Court stated in the leading case

of *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3 (1951), fundamental Fifth and Sixth

Amendment values may be irreparably compromised by pretrial detention:

> From the passage of the Judiciary Act of 1789, 1 Stat.
> 73 91, to the present Federal Rules of Criminal
> Procedure, Rule 46(a)(1), federal law has
> unequivocally provided that <u>a person arrested for a
> noncapital offense shall be admitted to bail</u>. This
> traditional right to freedom before conviction <u>permits
> the unhampered preparation of a defense, and serves
> to prevent the infliction of punishment prior to
> conviction.</u> Unless the right to bail before trial is
> preserved, the presumption of innocence, secured only
> after centuries of struggle would lose its meaning.
> (Emphasis added).

The Ninth Circuit, in a leading bail case, has emphatically admonished that

courts "bear in mind that federal law has traditionally provided that a person

arrested for a noncapital offense shall be admitted to bail*," United States v.*

***Motamedi,*** 767 F.2d 1403, 1405 (9th Cir. 1985), declaring further that, "only in

rare circumstances should release be denied." **Id**. at 1405.  Furthermore, the

Second Circuit has appropriately cautioned that courts "should bear in mind that it

is only a 'limited group of offenders' who should be denied bail pending trial."

*United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987).  Most significantly, as

the Court held in *Motamedi*, "[d]oubts regarding the propriety of the release should

be resolved in favor of the Defendants."  *Motamedi, supra*, 767 F.2d at 1405

[quoting *Herzog v. United States*, 75 S.Ct. 349, 352 (1955) (Douglas J. in

Chambers)](emphasis added).  In fact, the *Motamedi* Court, in reference to the

"Bail Reform Act" of 1984, has specifically required that pretrial detention orders

must be carefully reviewed to ensure that the Eighth Amendment mandate has

been respected.

     RESPECTFULLY SUBMITTED this 6th day of August, 2024.


                /s/*Brian F. Russo*

                Brian F. Russo
                Attorney for Defendant:

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Gayle Herlat, AUSA

**Law Office of Brian F. Russo**
Brian F. Russo, Esq. (AZ Bar 018594)
10037 East Dynamite Blvd.
Suit C-101
Scottsdale, AZ 85262
Telephone (602) 340-1133
E-mail: bfrusso@att.net
Attorney for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

\* \* \* \* \*

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-5237-mj |
| | ) | |
| vs. | ) | |
| | ) | **AMENDED MOTION FOR** |
| Donald Kirk Michael, | ) | **PRETRIAL RELEASE** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

COMES NOW, the Defendant, Donald Michael, by and through counsel undersigned, and hereby moves this Honorable Court for an order releasing the Defendant pending trial in this matter because he is not a flight risk and does not pose a danger to himself or the community.  Mr. Michael respectfully suggests that he will rebut the Statutory presumption and that there are conditions and combinations of conditions that will effectively address and mitigate any concerns.

This Motion for Pretrial Release is made and based upon the attached Memorandum of Points and Authorities, the argument of counsel, and any other such evidence as may be presented at the time of hearing.

Dated this 6th day of August, 2024.

_____/S/Brian F. Russo_____
Brian F. Russo
Attorney for Defendant

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **STATEMENT OF THE FACTS**

First and foremost, it should be noted that Donald Michael has no criminal history and has never failed to appear for a court date.  He is 46 years old and has own real property in Arizona.  He currently resides with his Mother Shirley Michael and his Father David Michael in Queen Creek Arizona.   Neither his Father, nor his Mother have any criminal history.    Mr. Michael also owns real property in Gilbert, Arizona, which he utilizes as rental property.

Mr. Michael's Mother and Father moved to Arizona so that he could serve as their full-time care assistants.  Mr. Michael's Father has been diagnosed with terminal Glioblastoma and cannot care for himself.   Mr. Michael's Mother is older and has limited ability to care for his Father by herself and therefore they require the assistance of Mr. Michael to drive them to and from Doctor and Hospital Appoints, pick up medications, go grocery shopping, pay the bills, do daily and routine tasks necessary to the function of a home and all other requirements they may have.

Mr. Michael is paid $7,000.00 per month by his parents to serve as their full-time and live-in care giver.  Mr. Michael has never had any issues of violence or caused harm to himself or others.

On February 21, 2024, the FBI executed a search warrant at the residence in which Mr. Michael and his parents live.  As mentioned above, Mr. Michael's parents are elderly, and his Father suffers from a terminal illness.  This was a traumatic experience for the family, but they remained polite and cooperative with law enforcement.

Mr. Michael was also advised prior to his arrest that his co-defendants were arrested and charged in the EDPA.  He was made aware that he was going to be arrested and charged as well.  Nevertheless, during that nearly 6 month period, Mr. Michael never left the jurisdiction and continued to reside and care for his parents. He never attempted to flee or hide himself from law enforcement or the jurisdiction of the Court.

***Pretrial Services Report***

1. At page 3, first paragraph PTS states that Mr. Michael lives near Crimson High School.  (*See Copy of Google Map attached hereto as Exhibit 1).* Although, Mr. Michael loves in the vicinity of the High School he has never been there and can effectively be restricted and monitored from being near the high school.  For example, the Court can order that Mr. Michael is not permitted to travel by foot, vehicle or otherwise south of E. Cloud Road, West of South 20th Street and East of South Crismon Road.  Electronic monitoring and GPS detection would be able to insure this restriction.
2. PTS includes a statement from law enforcement also at page 3 second paragraph that is self-serving, uncorroborated, and there is no proof to support this unnecessary piece of information.  It should be disregarded by the Court.
3. PTS claims Donald Michael is a risk of flight because of the nature of the charges.  It is conceded that the charges are serious and expose Mr. Michael to very harsh penalties.  However, as the Court knows nature of

the charge is the least weighted factor because the Defendant is presumed innocent and has not had an opportunity to review the government's evidence in support of the charges.

4. PTS claims Donald Michael lacks legitimate employment. His parents would unequivocally disagree as they rely completely upon him and pay him for his time and their dependence on him. (*See copies of payments made to Donald Michael from David Michael attached hereto as Exhibit 2).*

5. Mrs. Shirley Michael will bring Donald Michael's Passport to the United States District Court on August 13, 2024, for surrender to the Court.

6. PTS claims he has a history of international travel and traveled to Canada for work. Contrary to the insinuation Mr. Michael is an international man of mystery, his last travel was 8 years ago, and travel was infrequent at best. Most importantly thought he has no ties or connections in any foreign jurisdictions.

7. PTS claims Mr. Michael is a danger because of the charges and use of internet. Again, the presumption of innocence addresses the charges and internet usage can be restricted. In fact, this Court has restricted internet use, and their enforcement has been effective. In fact, Counsel is aware of specific instances where if the condition is violated it is reported to the Court without delay. Accordingly, this Court could prohibit the use of internet or any devices that could connect to the internet effectively addressing this concern.

### *Government's Motion*

1. The government's motion relies primarily on the nature of the offense conduct and Mr. Michael's potential sentence if convicted. For the reasons cited above, Mr. Michael enjoys the Constitutional presumption of innocence and has not received discovery in order to address the evidence in the case. He does not deny that the allegations are serious, and he is exposed to significant prison time. However, he has entered a plea of not guilty, is presumed innocent and has hired Counsel to defend against the charges.

2. The government's motion at page 2, lines 1-2 is misleading. Mr. Michael was not a baseball coach living in Northern VA "[a]t the time" as the government claims. In fact, he has been in Arizona for over 5 years. The alleged offense conduct in the indictment is from 2020 to 2021 when he was residing in Arizona.

3.  Finally, the government claims that because the Court in which the charges were filed requires an airplane trip or a long car journey, he should be detained.  This is absurd logic.  Air travel today is fast, cheap and easy. (*See copy of Exhibit 3 attached hereto).*  Counsel currently has cases in several different states and frequently makes court appearances there via air travel.  Mr. Michael has some means and would certainly use his resources to make his Court appearances with Counsel.  Further, as this Court is aware, many Courts across the Country including many United States District Courts utilize video and telephonic means for court appearances.  Accordingly, the claim that PA is far from AZ is simply not a logical or supported reason to deny Mr. Michael his liberty.

## STATEMENT OF THE LAW

### *Presumption*

Since the presumption under 3142(e) is invoked, the Defendant need only present some credible evidence showing he is not flight risk or danger to himself or the community.  That is, the Defendant has the burden of production only. *U.S. v. Alatishe*, 768 F.2d 364 (D.C. Cir. 1985); *U.S. v. Jessup*, 757 F.2d 378 (1st Cir. 1985); *U.S. v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985); *U.S. v. Perry*, 788 F.2d 100 (3d Cir. 1986); *U.S. v. Fortna*, 769 F.2d 243 (5th Cir. 1985); *U.S. v. Hazime*, 762 F.2d 34 (6th Cir. 1985); *U.S. v. Portes*, 786 F.2d 758 (7th Cir. 1985); *U.S. v. Hurtado*, 779 F.2d 1467 (11th Cir. 1985); *U.S. v. Freitas*, 602 F. Supp. 1283 (N.D. Cal. 1985); *U.S. v. Moore*, 607 F. Supp. 489 (N.D. Cal. 1985).

In a "presumption" case the language from Justice Brunetti, in his concurring opinion, in **United States v. Fernandez-Alfonso** illuminates the fact that:

> A presumptively innocent defendant has a great liberty interest in avoiding pretrial detention.  Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act.  Because Fernandez-Alfonso attempted to rebut Section 3142(e)'s presumption ... the legislative history [of the Act] requires that the district court discuss conditional release.  Its failure to do so makes its finding that no conditions could be fashioned to assure Fernandez-Alfonso's appearance error.

Additionally, it is clear that the Government must establish that no condition or combination of conditions of release would reasonably assure the safety of the community by clear and convincing evidence.  **See**, **18 U.S.C. 1342(f)**; **United States v. Salerno** 481 U.S. ___, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); **United States v. Walker**, 808 F.2d 1309 (9th Cir. 1987); and **United States v. Kouyoumdjian** 601 F.Supp. 1506 (CD Cal 1985).

Here, Mr. Michael has produced more than the minimum of amount of credible evidence to rebut the presumption.  He has also outlined and suggested conditions of release that can be set and that will reasonably assure his appearance and the safety of the community.  These conditions will reasonably assure Mr. Michael's appearance and his compliance with all court orders.  In addition, Mr. Michael's Mother Shirley, with whom he lives has been vetted by PTS as suitable candidate to be a third-party custodian.

It must be emphasized that in enacting the "reasonably assure" standard, Congress merely "codified existing authority to detain persons who are serious flight risks."  S.Rep. No.98-255, 98th Cong. 2d Sess. 4,, reprinted in 1984 U.S.

Code Cong. And Admin. News, 3182, 3201.  The "existing authority" at that time was exemplified by *United States v Ramirez*, 589 F. Supp. 137 (D. Minn 1984); *United States v. Schiavo*, 587 F.2d 532 (1st Cir. 1978).  All factors outlined above and the fact that he has retained Counsel demonstrate that Mr. Michael takes this case seriously and will appear and defend.

Recognizing this very principle, the Court, in *United States v. Meinster*, 481 F. Supp. 1117 (S.D. Fla. 1979), held that to revoke bond based upon likelihood of flight "The United States must demonstrate by the totality of the circumstances ... that there is no reasonable assurance that the defendant will continue to appear for trial and at sentencing..."  Id. at 1122.  See also *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (not only should doubts regarding the propriety of release be resolved in favor of the defendant, but that "only in rare circumstance should release be denied").

Donald Michael knew for almost 6 months that he would be charged and arrested and that the charges would be very serious, exposing him to a lengthy prison sentence.   Nevertheless, he continued to care for his parents, maintained his residence, and otherwise never attempted to secret himself from the Court's jurisdiction. These are not the actions of someone who is a flight risk or danger. Accordingly, the presumption has been rebutted and Donald Michael should be released.

Once, the presumption has been rebutted as is the case here, the Court must look to the factors concerning release and the Bail Reform Act.  The **Bail Reform Act of 1984 (18 USC 3141, et seq.)** is designed to permit detention of individuals who 1) the government believes to be dangerous, during times of war or insurrection; 2) potentially dangerous resident aliens, pending deportation proceedings; 3) mentally unstable individuals who present a danger to the public; 4) dangerous criminal defendants who become incompetent to stand trial; 5) juvenile arrestees, prior to trial, when they present a continuing danger to the community; 6) arrestees who are suspected of a crime, until the court determines whether probable cause exists; and 7) arrestees, prior to trial, when they present either a risk of flight or danger to the community.

As the High Court stated in *United States v. Salerno*, 41 US 739, 107 S.Ct. 2095, 95 L.Ed.2nd 697 (1987), in the United States, liberty is the norm, and detention is the carefully limited exception.  Furthermore, the High Court found that the **Act** operates only on individuals who have been arrested for particular extremely serious offenses, and carefully delineates the circumstances under which detention will be permitted.  The Court found that the **Act's** extensive procedural safeguards are specifically designed to further the accuracy of the likelihood of future dangerousness determination.

Indisputably, the ***Bail Reform Act of 1984*** allows a court to detain a defendant if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community."  It is only under circumstances where the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that it may be reasonably deemed appropriate to order detention of the person.

The Court also addressed the issue of risk of flight.  Where the government seeks to detain someone based upon a risk of flight the court has stated that bail must be set by the court at a sum designed to assure that goal, and no more, citing, *Stack v. Boyle*, 342 US 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

As the court reiterated in *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1981) the ***Bail Reform Act*** requires release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person as required and safety of community.

 The factors which must be considered in determining whether there are conditions of release that will reasonably assure appearance of the person and the safety of the community are 1) nature and seriousness of the offense charged; 2) weight of evidence against defendant; 3) defendant's character; 4) physical and mental condition; 5) family and community ties; 6) past conduct; 7) history

relating to drug and alcohol abuse; 8) criminal history; and 9) nature and seriousness of danger to any person or community that would be posed by defendant's release. *US v. Motamedi*, 767 F.2d, at 1407.

It is also a fundamental principle of our criminal justice system that congressional action may not be interpreted to preclude or restrict the power of the judiciary to effectuate the federally guaranteed constitutional rights of an accused, pursuant to the doctrine of separation of powers. *Marbury v. Madison*, 5 U.S. 1 (1 Cranch) 137 (1803). As the United States Supreme Court stated in the leading case of *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3 (1951), fundamental Fifth and Sixth Amendment values may be irreparably compromised by pretrial detention:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning. (Emphasis added).

The Ninth Circuit, in a leading bail case, has emphatically admonished that courts "bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail*," United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985), declaring further that, "only in

rare circumstances should release be denied." **Id**. at 1405. Furthermore, the Second Circuit has appropriately cautioned that courts "should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Most significantly, as the Court held in *Motamedi*, "[d]oubts regarding the propriety of the release should be resolved in favor of the Defendants." *Motamedi, supra*, 767 F.2d at 1405 [quoting *Herzog v. United States*, 75 S.Ct. 349, 352 (1955) (Douglas J. in Chambers)](emphasis added). In fact, the *Motamedi* Court, in reference to the "Bail Reform Act" of 1984, has specifically required that pretrial detention orders must be carefully reviewed to ensure that the Eighth Amendment mandate has been respected.

RESPECTFULLY SUBMITTED this 6th day of August, 2024.

/s/ *Brian F. Russo*

Brian F. Russo
Attorney for Defendant:

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Gayle Herlat, AUSA

EXHIBIT 1

Google Maps   21864 E Sunset Dr



Imagery ©2024 Airbus, Maxar Technologies, Map data ©2024 Google   1000 ft

EXHIBIT 2

| | Amount | Deliver By | Status |
|---|---|---|---|
| ADV TIERED INTEREST CHKG *1215 | $23.01 | 4-16-24 | Processed<br>Cfm # W2C0P-27W8B |
| ADV TIERED INTEREST CHKG *1215 | $40.00 | 4-16-24 | Processed<br>Cfm # W2C28-W4CL3 |
| ADV TIERED INTEREST CHKG *1215 | $274.89 | 4-16-24 | Processed<br>Cfm # W12FN-NQX01 |
| ADV TIERED INTEREST CHKG *1215 | $7,000.00 | 4-2-24 | Processed<br>Cfm # VXT06-LQ6SW |
| ADV TIERED INTEREST CHKG *1215 | $65.00 | 3-25-24 | Processed<br>Cfm # W03V0-J3Y4F |
| ADV TIERED INTEREST CHKG *1215 | $728.70 | 3-15-24 | Processed<br>Cfm # VXZJZ-5JF58 |
| ADV TIERED INTEREST CHKG *1215 | $5,000.00 | 3-1-24 | Processed<br>Cfm # VTZ1S-N85MY |
| ADV TIERED INTEREST CHKG *1215 | $129.44 | 2-22-24 | Processed<br>Cfm # VWLH7-107BR |
| ADV TIERED INTEREST CHKG *1215 | $75.14 | 2-15-24 | Processed<br>Cfm # VTTXC-7LFGY |
| DV TIERED INTEREST CHKG *1215 | $615.00 | 2-8-24 | Processed<br>Cfm # VV7SV-ZGSVM |
| V TIERED INTEREST CHKG *1215 | $5,000.00 | 2-2-24 | Processed<br>Cfm # VTQZD-CZFKL |
| TIERED INTEREST CHKG *1215 | $267.84 | 1-15-24 | Processed<br>Cfm # VQPL4-WRY0X |

of 24 payments

ion

chael

ty

el

Services

ces

| | Amount | Deliver By | Status |
|---|---|---|---|
| ADV TIERED INTEREST CHKG *1215 | $7,000.00 | 8-2-24 | Processed Cfm # WCRQ5-32Z7C |
| ADV TIERED INTEREST CHKG *1215 | $5,000.00 | 8-2-24 | Canceled Cfm # WBCCY-JMD9B |
| ADV TIERED INTEREST CHKG *1215 | $89.90 | 7-23-24 | Processed Cfm # WCRQ9-4VPRH |
| ADV TIERED INTEREST CHKG *1215 | $7,000.00 | 7-2-24 | Processed Cfm # W70T8-JCQ71 |
| ADV TIERED INTEREST CHKG *1215 | $123.97 | 6-14-24 | Canceled Cfm # W7HSB-1ZMJ9 |
| ADV TIERED INTEREST CHKG *1215 | $280.31 | 6-5-24 | Processed Cfm # W81K8-GKMWP |
| ADV TIERED INTEREST CHKG *1215 | $7,000.00 | 5-31-24 | Processed Cfm # W42PY-YS4WM |
| ADV TIERED INTEREST CHKG *1215 | $123.97 | 5-26-24 | Processed Cfm # W76TC-0DF8G |
| ADV TIERED INTEREST CHKG *1215 | $189.64 | 5-16-24 | Processed Cfm # W5CD6-H5V5C |
| ADV TIERED INTEREST CHKG *1215 | $7,000.00 | 5-2-24 | Processed Cfm # W11GN-C6XRV |
| ADV TIERED INTEREST CHKG *1215 | $2,026.62 | 5-1-24 | Processed Cfm # W4GGZ-L4765 |
| | $49,929.46 | | Scheduled, In Process, and Processed |

page  1

EXHIBIT 3

# American Airlines

« New search

**DEPART**

# Choose flights

## Phoenix, AZ to Pittsburgh, PA

Tuesday, August 6, 2024



| Sat. Aug 3 | Sun. Aug 4 | Mon. Aug 5 | Tue. Aug 6 | Wed. Aug 7 | Thu. Aug 8 | Fr |
|---|---|---|---|---|---|---|
| -- | -- | $537 | $503 | $522 | -- | -- |

Filter by:   Stops ▶   American Airlines   Duration ◀▶

Depart ◀▶   Arrive ◀▶

**Main**   **Premium**   ◀▶

PHX    PIT
**4:05 PM → 11:00 PM**   3h 55m   Nonstop
✈ AA 2927 · 320 · Airbus A320

Details   Seats

Round trip from
$503

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

United States of America

v.

Donald Kirk Michael

**ORDER OF DETENTION PENDING TRIAL**

Case Number: 24-05237MJ-01-PHX-DMF

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts are established:  *(Check one or both, as applicable.)*

☒　by clear and convincing evidence the defendant is a danger to the community and require the detention of the defendant pending trial in this case.

☐　by a preponderance of the evidence the defendant is a flight risk and require the detention of the defendant pending trial in this case.

### PART I -- FINDINGS OF FACT

☐　　(1)　　There is probable cause to believe that the defendant has committed
　　☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in 21 U.S.C. §§ 801 et seq., 951 et seq, or 46 U.S.C. App. § 1901 et seq.
　　☐ an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332(b).
　　☐ an offense listed in 18 U.S.C. § 2332b(g)(5)(B) (Federal crimes of terrorism) for which a maximum term of imprisonment of ten years or more is prescribed.
　　☐ an offense involving a minor victim prescribed in .[1]

☐　　(2)　　The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings

☐　　(1)　　There is a serious risk that the defendant will flee; no condition or combination of conditions will reasonably assure the appearance of the defendant as required.

☒　　(2)　　No condition or combination of conditions will reasonably assure the safety of others and the community.

☐　　(3)　　There is a serious risk that the defendant will obstruct or attempt to obstruct justice; or threaten, injure, or intimidate a prospective witness or juror.

---

[1]Insert as applicable: Title 18, § 1201 (kidnapping), § 1591 (sex trafficking), § 2241 (aggravated sexual abuse), § 2242 (sexual abuse), §2244(a)(1) (abusive sexual contact), § 2245 (offenses resulting in death), § 2251 (sexual exploitation of children), § 2251A (selling or buying of children), § 2252 et seq. (certain activities relating to material involving sexual exploitation of minors), § 2252A et seq. (certain activities relating to material constituting or containing child pornography), § 2260 (production of sexually explicit depictions of minors for importation into the U.S.), § 2421 (transportation for prostitution or a criminal sexual activity offense), § 2422 (coercion or enticement for a criminal sexual activity), § 2423 (transportation of minors with intent to engage in criminal sexual activity), § 2425 (use of interstate facilities to transmit information about a minor).

## PART II -- WRITTEN STATEMENT OF REASONS FOR DETENTION
*(Check one or both, as applicable.)*

☐      (1)    I find that the credible testimony and information submitted at the hearing establishes by clear and convincing evidence of danger.

      Here, the Bail Reform Factors require Defendant's detention. The nature and seriousness of the charged offenses support detention. Defendant faces a mandatory minimum with a potential, substantial guideline range. The alleged charges involve actual minor victims. Defendant's history and characteristics favor release. He has no criminal history, substantial community ties, family support, and employment. The weight of the evidence, the least important factor, favors detention. The nature of the danger to the community if Defendant were released favors detention. While the charges are exceptionally serious, Defendant's alleged conduct in the Indictment also spans more than a year. The government alleges his conduct exceeded the dates in the indictment. In short, Defendant actively targeted minors on multiple occasions over a long period of time. The Court concludes there are no conditions that will reasonably protect the community if Defendant were released.

☐      (2)    I find by a preponderance of the evidence as to risk of flight that:

    ☐    The defendant has no significant contacts in the District of Arizona.

    ☐    The defendant has no resources in the United States from which he/she might make a bond reasonably calculated to assure his/her future appearance.

    ☐    The defendant has a prior criminal history.

    ☐    There is a record of prior failure to appear in court as ordered.

    ☐    The defendant attempted to evade law enforcement contact by fleeing from law enforcement.

    ☐    The defendant is facing a minimum mandatory of  incarceration and a maximum of .

☐    The defendant does not dispute the information contained in the Pretrial Services Report, except:

☐    In addition:

The Court incorporates by reference the findings in the Pretrial Services Report which were reviewed by the Court at the time of the hearing in this matter.

## PART III -- DIRECTIONS REGARDING DETENTION

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

## PART IV -- APPEALS AND THIRD-PARTY RELEASE

IT IS ORDERED that should an appeal of this detention order be filed with the District Court, it is counsel's responsibility to deliver a copy of the motion for review/reconsideration to Pretrial Services at least one day prior to the hearing set before the District Judge.  Pursuant to Rule 59, FED.R.CRIM.P., Defendant shall have fourteen (14) days from the date of service of a copy of this order or after the oral order is stated on the record within which to file specific written objections with the District Court.  Failure to timely file objections may waive the right to review. *See* Rule 59, FED.R.CRIM.P.

IT IS FURTHER ORDERED that if a release to a third party is to be considered, it is counsel's responsibility to notify Pretrial Services sufficiently in advance of the hearing before the District Judge to allow Pretrial Services an opportunity to interview and investigate the potential third-party custodian.

Dated this 14th day of August, 2024.

Honorable John Z. Boyle
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America** | **Case Number: 24-05237MJ-001-PHX-DMF** |
| **v.** | **Charging District's Case No.** |
| **Donald Kirk Michael** | **2:24-cr-00263-MAK-1** |

### COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the Eastern District of Pennsylvania, Philadelphia Division. The defendant may need an interpreter for this language: N/A.

The defendant:  ☒  will retain an attorney.

☐  is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date:    8/13/2024

_____
Hon. John Z. Boyle
United States Magistrate Judge

cc: USMS by MCC

AO 94 (Rev. 06/09)  Commitment to Another District