**LAW OFFICE OF BRIAN F. RUSSO**
**Brian F. Russo, Esq. (018594)**
10037 East Dynamite Blvd
Suite C-101
Scottsdale, AZ 85262
Telephone (602) 340-1133
email: bfrusso@att.net
and
**THE PHILLY LAWYERS**
**R. Emmett Madden, Esq (86894)**
711 West Ave
Jenkintown, PA 19046
email: emadden@thephillylawyers.com
Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRCIT OF PENNSYLVANIA**

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Donald Michael,<br>Defendant. | Case No.: 2:24-00263<br>**DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW the Defendant, Donald Michael, by and through undersigned Counsel, and hereby submits his Sentencing Memorandum in support of a sentence, which is sufficient but not greater than necessary to satisfy the legitimate goals of sentencing.

This Memorandum is made based upon the papers and pleadings filed herein, the attached Memorandum of Points and Authorities, and any oral argument which may be heard at the time of sentencing September 21, 2026.

RESEPECTFULLY SUBMITTED this 11th day of September, 2026.

*Brian Russo*
Brian F. Russo
Attorney for Defendant

*R. Emmett Madden*
R. Emmett Madden
Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Procedural and Factual History

The Pre Sentence Report (hereinafter "PSR") accurately reflects the facts and procedural history in this case.

Donald Michael is a 47-year-old man with no criminal history. He has, throughout his life, been a law-abiding citizen *sans* the offense conduct in this case. Donald was employed and was a valued employee. He moved to Arizona and cared for his elderly parents. He also assisted his mother with the palliative care of his terminally ill father who passed away after Donald was detained in this case.

### B. PSR Guideline Calculations

#### 1. *Application of the Guidelines by Federal Courts*

The PSR calculations are accurate according to current guideline calculations. However, the draconian progression of the child pornography guidelines to a level where defendants who actually have sex with minors and defendants or who severely abuse minors, have lower guideline ranges than defendants who possess child pornography. This has produced telling statistics.

First, in the fiscal year October 2010-September 2011, there were 1,620 cases sentenced using U.S.S.G. § 2G2.2 and there were downward departures/variances in sixty-six percent (1062) of the cases. In sixty-three percent (1013) of the 1,620 cases, the departure/variances had no relation to U.S.S.G. § 5K1.1.

Second, when the Sentencing Commission surveyed federal judges, seventy percent of the 576 federal judges responding believed the sentencing guidelines were too harsh for defendants possessing child pornography.

These statistics were reflected in the statement by Judge Casey who addressed the Sentencing Commission on behalf of the Judicial Conference of the United States Committee on Criminal Law:

> In the vast majority of cases on the federal courts' criminal dockets, the work of the Commission has enabled judges to proceed with confidence that their sentencing judgment is informed not only by the law and facts before them in a particular case, but also by the experience, thorough study and expertise underlying each of the Commission's guideline decisions . . . **Unfortunately, however, this is not the case in the area of child pornography offenses**....There is a common sentiment among many trial judges that these sentencing guidelines fail to provide an appropriate baseline or starting point for child pornography offenses which, combined with numerous offense characteristics, restrictions on departures, and congressionally mandated provisions not fully supported by the Commission's empirical study, produce guideline ranges that are too high compared to the statutory range, particularly in the area of possession and receipt. We seek guidelines that more accurately reflect the severity of the offense and meet the goals of sentencing reform.

*Data and Statistics in Federal Sentencing 2011 Quarterly Update.*

In FY 2019 the Sentencing Commission again reviewed and updated the statistics. https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses. Relevant to Mr. Michael's case, the sentencing range agreed upon by the government and Mr. Michael (265-340) in the plea agreeement, according to Commission statistics and data, is within the national average for production cases such as this one. The Commission found:

> Child pornography production offenders generally received lengthy sentences. In fiscal year 2019, production offenders received an average sentence of almost 23 years of imprisonment (275 months), ranging from one year to life imprisonment. Furthermore, over three-quarters (78.0%) were convicted under a statute carrying at least a 15-year mandatory minimum penalty. Most child pornography production offenders, however, received a variance below the applicable guideline range (57.2% of the 512 cases).

It is conceded that these offenses are among the most abhorrent in our society, but it is also important to reconcile that with other equally vile offenses involving actual person on

person violence where the guidelines are far less than those for viewing child pornography. Mr. Michael's offenses do not involve any physical contact with minors. It should not be minimized that, 22 years in prison is an extremely long period of incarceration.

Several District Court Judges, surveyed nationally, have opined in a similar way. A review of testimony by district judges before the Sentencing Commission in a series of public hearings commemorating the twenty fifth anniversary of the Sentencing Reform Act illustrates the view that the child pornography guidelines often do not reflect the seriousness of the offense. Chief District Judge Susan Oki Mollway (District of Hawaii), for instance, testified: "I have been troubled by Guideline 2G2.2, as applied in certain child pornography cases. More than once, I have viewed the guidelines as suggesting a sentence that is disproportionately high for the offense conduct."

District Judge Richard J. Arcara (Western District of New York) stated: "It also seems to be the case that numerous enhancements apply to every child pornography offender...Once all of these enhancements are applied, a first-time offender is often facing the statutory maximum." Finally, Chief District Judge Audrey B. Collin (Central District of California) asserted: "We see so many of these cases lately, and while we do not necessarily all agree on how [child pornography cases] should be handled, everyone does agree that the Guidelines applicable to these cases are not well designed. This is especially true for those defendants accused only of owning child pornography, and not of its creation or distribution. There is no question that these defendants deserve punishment, but how much? Almost all child pornography offenses involve these same enhancements, rendering them meaningless. But the cumulative effect of these enhancements is the imposition of extremely long sentences in almost every case, often at or near the maximum even for first-time offenders."

*https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20120215/Testimony_15_Rodgers.pdf*

**C. <u>Legal Discussion</u>**

The fundamental rule governing consideration for the district court in sentencing is the directive of Congress that the district court "shall impose a sentence sufficient***, but not greater than necessary***, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a); *Pepper v. U.S.* 131 S.Ct. 1229, 1242 (2011) ("sentencing judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)").[1]

The factors the Court shall consider in determining what is sufficient are set out in 18 U.S.C. § 3553.

**1. <u>The advisory Guideline range is greater than necessary to satisfy the purpose of sentencing.</u>**

A. The Sentencing Guidelines Are Not An Effective Tool to Effectuate the Statutory Mandate In This Case.

*1. Flawed Methodology*

In most sentencings, the Sentencing Guidelines range "will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."' *Kimbrough v. United States,* 552 U.S. 85, 109, 128 S.Ct. 558,169 L.Ed.2d 481(2007), quoting *Rita v. United States,*

---

[1] *U.S. v. Johnson* 635 F.3d 983 (7th Cir. 2011)(The essence of *Kimbrough* is to permit district courts to depart from the advisory ratio when its application would result in a sentence that is "greater than necessary to accomplish the goals of sentencing."); *U.S v. Chavez*, 611 F.3d 1006, 1010 (9th Cir. 2010) (explaining that § 3553(a)'s parsimony clause expresses "an overarching principle [that] necessarily informs a sentencing court's consideration of the entire constellation of section 3553(a) factors" (alteration in original, quotation marks omitted));*U.S. v. Carty* 520 F.3d 984 (9th Cir. 2008) (*en banc*) (this principle is the "overarching statutory charge); *U.S. v. Hussein* 478 F.3d 318 (6th Cir. 2007) ("The plain import of *Booker* is that a 1-day, below-the-Guidelines sentence, no less than a 7,300-day, above-the-Guidelines sentence, is now a viable sentence for a district court to impose so long as it is authorized by statute and reasonable within the meaning of 18 U.S.C. § 3553(a)").

551 U.S. 338, 350, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The Guidelines can be the starting point for fashioning an appropriate sentence: Congress established the Commission to formulate and constantly refine national sentencing standards. See *Rita*, 551 U.S. at 347 – 350, 127 S.Ct. 2456, 2464 –2465, 168 L.Ed.2d 203.

However, the Guidelines applicable to the instant offenses are not the product of the Commission's established methodology. Rather, [T]he Commission did not use an empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. *See United States Sentencing Commission, The History of the Child Pornography Guidelines, Oct. 2009, available at http://www.ussc.gov/general/20091030_History_Child_Pornography_ Guidelines.pdf (last visited April 19, 2010).*

In short, the current guidelines lump all offenders into this category and regularly get calculated at or near maximum sentences. The effect is to dimmish judicial discretion causing disregard to the individual and consideration of proportionality.

Thus, Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court has broad discretion under 3553 and can depart downward in order to reach the appropriate sentence. *United States v. Roth, 2008 U.S. Dist. LEXIS 19603.* A sentence within the Guideline range, in Mr. Michael's case would be far greater than necessary to comply with the factors set forth in 18 U.S.C. §3553(a) which require the Court to consider the need for the sentence imposed:

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> **(B)** to afford adequate deterrence to criminal conduct;
> **(C)** to protect the public from further crimes of the defendant; and

> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

***Seriousness of Offense and Respect for Law***

It is understood that these offenses are serious and are treated as such. No one is more disappointed by this conduct than Mr. Michael. He has taken positive and proactive steps to address the conduct. Mr. Michael hired Dr. Dattilio for a psychosexual exam and to make recommendations for effective treatment. *See Psychological Evaluation and Sexual Risk Assessment/Mitigation Report dated 8/21/25, By Dr. Frank M. Dattilio filed under seal.*

Dr. Dattilio identified several factors relevant to the offense conduct and outlined a targeted treatment plan for Mr. Michael's rehabilitation. Crucially, this recommended treatment will facilitate a psychological shift, thereby reducing the risk of recidivism.

***Deterrence***

A sentence within the agreed-upon range represents a significant period of incarceration. While this theoretically provides a deterrent effect—and certainly deters Mr. Michael personally—the broader societal impact of lengthy sentences is often overemphasized. Crucially, strict incarceration fails to account for the psychological components driving these offenses. It warehouses offenders rather than addressing the underlying causes of the conduct, ultimately failing to solve the problem.

***Protect the Public***

Donald Michael is by all accounts a thoughtful and caring person. He has reflected on this offense conduct and the ways in which he can rehabilitate. He will serve a sentence of at least 23 years and be approximately 70 years old when released. Numerous studies have demonstrated that Recidivism rates drop sharply for older demographics. Federal and state data show that only about 4% to 7% of individuals aged 50 to 64 return to prison for new crimes, and the rate falls to

roughly 2% or lower for those older than 65. *https://www.vera.org/publications/compassionate-release-aging-infirm-prison-populations.*

***To Provide the Defendant with Needed Educational or Vocation Training, Medical Care, or other Correctional Treatment***

Donald Michael is a smart and talented individual who can be productive in the community when released. He is amendable to whatever further treatment and education are available to him because he always strives to better himself. He is motivated to do well.

2. **Mitigation: First Offense, In-Prison Therapy and Supervised Release**

Mr. Michael fully recognizes the seriousness of the offense conduct and does not seek to minimize it. However, the compelling mitigation in this case warrants equal consideration. Unlike many defendants classified under Criminal History Category I—who often possess stale convictions or unscored misdemeanor offenses—Mr. Michael is a true first-time offender.

Sentencing courts possess the authority to consider a defendant's lack of a criminal record as a mitigating factor outside the framework of the Sentencing Guidelines. In *United States v. White*, 506 F.3d 635, 644–45 (8th Cir. 2007), a child pornography distribution case, the Eighth Circuit affirmed a downward variance to 72 months from a guideline range of 108 to 135 months. In doing so, the court rejected the government's argument that a defendant's lack of a prior record cannot be considered simply because it is already factored into Category I, affirming that a clean record may be evaluated independently under 18 U.S.C. § 3553(a).

Finally, Mr. Michael is an excellent candidate for rehabilitation through targeted therapy. He is fully committed to utilizing his time during incarceration to actively engage in these rehabilitative programs.

Similarly, and as discussed above, there will still be a period of supervised release --which can be of any length the Court desires and which can include severe restrictions and/or

prohibitions on the use of media and other forms of communication that may be in existence at the time of release. It is suggested that there are legitimate resources that can be utilized by courts in tandem with a reasonable period of incarceration that would serve all of the objectives of sentencing.

**Restitution**

Mr. Michael has reviewed the requested restitution and fully agrees to the amount. He has coordinated with his financial advisors to arrange for immediate, full payment. It is respectfully suggested that this demonstrates remorse--early and voluntary repayment evidences genuine responsibility for the harm caused. Further, this supports acceptance of responsibility**.** Pursuant to U.S.S.G. § 3E1.1 Application Notes, the "voluntary payment of restitution prior to adjudication of guilt" is an explicit factor the court can consider when deciding to grant a 2-to-3-level offense reduction for acceptance of responsibility.

**CONCLUSION**

Donald Michael has remained accountable for his actions and endeavors to rehabilitate. He is capable of change and returning to a productive law-abiding life upon release. For the foregoing reasons Donald Michael respectfully suggests that a sentence of 262 months is the appropriate sentence.

RESEPECTFULLY SUBMITTED this 11th day of September, 2026.

Brian Russo
Brian F. Russo
Attorney for Defendant

R. Emmett Madden
R. Emmett Madden
Attorney for Defendant

**EXHIBIT A FILED AS SEALED**